**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ROBERT S.,

                Plaintiff,

   v.                                     5:23-CV-852
                                                 (MAD/DJS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| HILLER COMERFORD INJURY<br>& DISABILITY LAW<br>*Attorney for Plaintiff*<br>6000 North Bailey Avenue - Suite 1A<br>Amherst, New York 14226 | JUSTIN M. GOLDSTEIN, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF THE GENERAL COUNSEL<br>*Attorney for Defendant*<br>6401 Security Boulevard<br>Baltimore, Maryland 21235 | JASON P. PECK, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt.

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(e).

No. 1.  Currently before the Court are Plaintiff's and Defendant's respective Motions for Judgment on the Pleadings.  Dkt. Nos. 9, 11, & 12.  For the reasons below, it is recommended that Plaintiff's Motion be denied and Defendant's Motion be granted.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff was born in 1993, reported that he completed high school, and has a variety of past work experience.  Dkt. No. 6, Admin. Tr. ("Tr.") at pp. 39, 62, & 75.  Plaintiff alleges disability stemming from Hodgkin's lymphoma (in remission), panic attacks, depression, mental health, back problems, "chemo brain," and obsessive compulsive disorder.  Tr. at p. 261.  In 2021, Plaintiff applied for disability insurance benefits and supplemental security income, alleging a disability onset date of August 15, 2018.  Tr. at pp. 233-246.  Plaintiff's applications were initially denied on July 30, 2021 and upon reconsideration on December 21, 2021, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 125-134, 143-156, 171-172.  Plaintiff subsequently appeared and testified at a hearing before ALJ Kenneth Theurer on October 24, 2022.  Tr. at pp. 32-59.  On October 31, 2022, ALJ Smith issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 10-21.  The Appeals Council later denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-3.

## B. The ALJ's Decision

In his decision, the ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. Tr. at p. 12. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. at p. 12. Third, the ALJ determined that Plaintiff had the following severe impairments: disorder of the back, depressive disorder, and anxiety disorder. Tr. at p. 13. Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Tr. at pp. 14-15. Fifth, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> He can lift or carry 10 lb. frequently and 20 lb. occasionally, can stand/ walk for 6 hours, and sit for 6 hours in an 8-hour workday; he can occasionally climb ramps or stairs but never ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch or crawl, and he should avoid working at unprotected heights or in conjunction with dangerous machinery. He can perform work limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements as would be experienced on an assembly line, and involving only simple, work-related decisions with few, if any, workplace changes. He can interact with supervisors and coworkers occasionally throughout the workday, after learning his job duties from an instructional or demonstrational lesson, and he can have no more than incidental contact with the public. I define incidental as more than never and less than occasional; simply the job should not involve direct interaction with the public, but the claimant does not need to be isolated away from the public.

Tr. at pp. 15-16.

Next, the ALJ found that Plaintiff was a "younger individual" on the alleged disability onset date, had a high school education, and job skill transferability was immaterial because Plaintiff is "not disabled" irrespective of transferable job skills. Tr. at p. 20. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform several jobs existing in "significant numbers in the national economy," including cleaner, price marker, and collator operator. Tr. at pp. 20-21. Finally, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act. Tr. at p. 21.

## II.  RELEVANT LEGAL STANDARDS

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

4

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The five-step process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

Plaintiff alleges the ALJ erred in his evaluation of the submitted medical evidence and, consequently, that his RFC finding is not supported by substantial evidence. *See generally* Dkt. No. 9, Pl.'s Mem. of Law. In response, Defendant asserts that the ALJ properly evaluated the record and that the analysis and ultimate decision were both supported by substantial evidence. Dkt. No. 11, Def.'s Mem. of Law at pp. 4-15.

### A. Supportability and Consistency

The Court disagrees with Plaintiff's argument that ALJ Theurer did not sufficiently evaluate the medical evidence of record. An ALJ need not "reconcile explicitly every conflicting shred of medical testimony." *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983). When evaluating medical evidence an ALJ must consider, among other factors, "(1) the amount of medical evidence supporting the opinion [and] (2) the consistency of the opinion with the remaining medical evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) (internal quotation marks omitted).

Specifically, "[t]o analyze supportability, the ALJ must conduct 'an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion.'" *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022) (quoting *Vellone v. Saul*, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021)). To assess consistency, the ALJ must conduct "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire

6

record." *Vellone v. Saul*, 2021 WL 319354, at *6; *see also Jennifer G. v. Comm'r of Soc. Sec.*, 2023 WL 8435991, at *9 (N.D.N.Y. Sept. 6, 2023) (remanding where the ALJ failed to "meaningfully discuss" the consistency of the medical opinions).

Here, Plaintiff asserts that ALJ Theurer did not properly assess supportability and consistency for the medical opinions of Dr. Fkiaras and Dr. Noia. Pl.'s Mem. of Law at pp. 16-17, 23. The Court disagrees. In discussing Dr. Fkiaras' opinion, the ALJ explicitly stated that the opinion was supported by a one-time examination. Though concise, this analysis was sufficient. *See Elizabeth A.P. v. Comm'r of Soc. Sec.*, 2023 WL 2742139, at *2 (N.D.N.Y. Mar. 31, 2023) (finding ALJ's discussion of a medical opinion being supported by a one-time examination sufficient under the supportability factor); *Rebecca S.L. v. Comm'r of Soc. Sec.*, 2022 WL 19073804, at *6, 8 (N.D.N.Y. Dec. 6, 2022) (affirming the ALJ's decision where the ALJ did not explicitly mention the supportability factor of the medical opinion at issue but noted that it was based on a one-time examination).

In assessing the consistency of Dr. Fkiaras' opinion, ALJ Theurer stated:

> While this assessment is, for the most part, consistent with the consultative examination [and] the claimant's presentation on this examination[,] [it is] not consistent with examination by treating providers, the imaging studies, or with the claimant's course of treatment and reported activities.

Tr. at p. 18. ALJ Theurer's thoughtful discussion is sufficient because it "permits [the Court] to glean [his] rationale. *Linda M. v. Kijakazi*, 2022 WL 4550810, at *4-5 (N.D.N.Y. Sept. 28, 2022) (internal quotation marks and citations omitted). Likewise,

when considering Dr. Noia's medical opinion, ALJ Theurer emphasized that Dr. Noia's findings were "supported by a detailed narrative rationale, which cites supporting mental status examination findings and other evidence from the record." Tr. at p. 19. The ALJ continued: "[h]owever, the record as a whole, in particular the clinical findings of the claimant's mental health providers, including emergency care providers, support somewhat *greater* limitations in all areas and moderate mental limitations are more consistent with the totality of the evidence." Tr. at p. 19 (emphasis added). This analysis, along with the decision to impose greater limitations than those recommended by Dr. Noia, was sufficient. *See Theresa G. v. Saul*, 2021 WL 1535472, at *5 (N.D.N.Y. Apr. 19, 2021) (internal quotation marks and citation omitted) ("The fact that a limitation was included despite its absence from any medical opinion means simply that the RFC was more generous than the medical opinions required, and where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand."). Because the ALJ adequately discussed supportability and consistency for both opinions, the Court does not recommend remand on this ground.

### B. Conclusory Analysis

Plaintiff also argues that the ALJ conducted an insufficient and conclusory analysis of the medical opinions of Dr. Reynolds and Dr. Schmidt-Deyoung. Pl.'s Mem. of Law at p. 16. Again, the Court disagrees. It is well-settled that an ALJ need not discuss every shred of medical evidence in great detail. *See, e.g.*, *Cook v. Colvin*, 2015

WL 5155720, *7 (S.D.N.Y. Sept. 2, 2015). Rather, the ALJ need only form a logical bridge between the medical evidence and his decision that permits this Court to glean his rationale. *See Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). ALJ Theurer did so here.

In finding the medical opinions of Dr. Reynolds and Dr. Schmidt-Deyoung persuasive, ALJ Theurer detailed how each doctor opined that Plaintiff "could perform light work, and can occasionally climb ramps or stairs, ladders, ropes or scaffolds, and can occasionally, stoop, kneel, crouch or crawl, and he should avoid even moderate exposure to hazards." Tr. at p. 19. He then stated his reasoning for finding the opinions persuasive:

> [T]hey had the opportunity to review the available medical evidence, including the report of the consultative examiner. Their opinions, which include a narrative report, including the clinical findings that support their opinions, are more consistent with the record as a whole. Their opinions are persuasive; however, consistent with the limitation for exposure to hazards, I find that the claimant should not climb ladders, ropes and scaffolds.

Tr. at p. 19. Given the detail ALJ Theurer provided, this Court can adequately glean the rationale supporting his decision. That said, remand is not recommended on this ground either.

### C. Cherry-Picking

Plaintiff also maintains that the ALJ "cherry-picked . . . Plaintiff's activities of daily living to minimize his subjective allegations." Pl.'s Mem. of Law at p. 24. "Cherry picking refers to improperly crediting evidence that supports findings while ignoring

9

conflicting evidence from the same source." *Pamela P. v. Saul*, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (internal quotation marks and citations omitted). While it is entirely permissible to rely more heavily on certain aspects of a medical opinion over others "an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently." *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015). If sound reasoning for his analysis exists, the ALJ "may accept only a portion of [an] opinion, and reject others without committing a fatal 'cherry picking' error." *Id.*

Here, Plaintiff reported that he could walk, use public transportation, shop, manage money, clean, do other household chores, watch television, listen to music, socialize in-person and online, and play video games. Tr. at pp. 18, 272-286. In that same report, Plaintiff disclosed that he has panic attacks regularly, gets anxiety often, has brain fog and memory issues, and suffers pain in his back and legs. Tr. at pp. 272-286. ALJ Theurer included limitations in his RFC finding to account for these complaints. Tr. at pp. 15-16. For instance, he limited Plaintiff's ability to stand/walk and lift or carry items and limited Plaintiff's social interactions. Tr. at pp. 15-16. Moreover, ALJ Theurer explained why some of Plaintiff's subjective complaints did not give rise to greater limitations, highlighting that Plaintiff sought most of his treatment on an emergency basis, he does not take medication to treat the alleged physical pain, and has sought only limited mental health treatment. Tr. at p. 18. Thus, the ALJ had "sound reason for weighting portions of the same source" differently. *Dowling v.*

*Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (alteration omitted). The Court does not recommend remand on this ground.

### D. Individualized Stress Assessment

Plaintiff claims that the ALJ also erred by failing to make an "individualized stress assessment in the RFC finding." Pl.'s Mem. of Law at p. 29. Plaintiff makes this argument because the ALJ found that Plaintiff has moderate limitations in "adapting" and "managing oneself" but did not include any such limitation in the RFC finding Tr. at pp. 15-16. Plaintiff's argument fails. ALJ Theurer's discussion on the limitations above was a part of his "paragraph B" analysis whereby he was very clear that the "paragraph B criteria are not a [RFC] finding but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. at p. 15; *see also* Soc. Sec. Ruling No. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (same). Accordingly, a certain finding in the paragraph B analysis does not necessitate a corresponding RFC limitation. *See Maura B. C. v. Comm'r of Soc. Sec.*, 2022 WL 2789102, at *6 (N.D.N.Y. July 15, 2022) ("[A] finding of a certain degree of limitation in [the paragraph B analysis] does not require any specific corresponding limitation in the RFC finding."); *Wells v. Colvin*, 87 F. Supp. 3d 421, 436 (W.D.N.Y. 2015) ("While the analysis at steps two and three concerns the functional effects of mental impairments, the RFC analysis at step four specifically considers work-related physical and mental activities in a work setting [such that] a finding at steps two or three does not automatically translate to an identical finding at step four."). Thus, the ALJ was under no obligation to make a

corresponding RFC finding here regarding stress management, and remand is not recommended on this ground.

### E.  Limitations Resulting from Neuropathy

Finally, Plaintiff asserts that ALJ Theurer erred in not discussing "evidence relating [to] chemotherapy-induced neuropathy." Pl.'s Mem. of Law at p. 19. In doing so, Plaintiff largely cites his own complaints of neuropathy. Pl.'s Mem. of Law at p. 19.

Plaintiff's argument that the ALJ erred in failing to address neuropathy should be rejected. "[T]here is no requirement that the ALJ explicitly address every piece of evidence in the record." *Natasha C. v. Comm'r of Soc. Sec.*, 2022 WL 17978835, at *6 (N.D.N.Y. Dec. 28, 2022), *report and recommendation adopted*, 2023 WL 356203 (N.D.N.Y. Jan. 23, 2023). Certainly, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Here, the record reflects that the ALJ did acknowledge Plaintiff's neuropathy. Tr. at p. 16. "But the record is otherwise devoid of any limiting effects created by this stated need. In not specifically considering the impact of Plaintiff's subjective statements regarding [neuropathy], the ALJ reasonably relied on medical opinions that failed to indicate Plaintiff had any such limitation." *Tricia W. v. Comm'r of Soc. Sec.*, 2023 WL 4471661, at *4 (N.D.N.Y. June 8, 2023), *report and recommendation adopted*, 2023 WL 4471792 (N.D.N.Y. July 11, 2023); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (an ALJ "is entitled to rely not only on what the record says, but also on what it does not say"). That said, it is

12

Plaintiff's "duty to prove a more restrictive RFC." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff's conclusory allegations fail to carry that burden.

The Court, therefore, does not recommend remand on this ground.

### IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 15, 2024
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge